UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CURLIN PENNICK III,

        Plaintiff,

v.

BARRY DEHAVEN,

        Defendant.

CASE NO. 3:18-cv-05434-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: January 4, 2019

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Curlin Pennick III, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on May 31, 2018. Dkt. 1.

Defendant has filed a Motion to Dismiss ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing Plaintiff has failed to adequately allege his constitutional rights were violated, and that Defendant is entitled to qualified immunity. However, read liberally, Plaintiff has alleged his sincerely held religious beliefs are burdened by not being provided a diet that is both compliant with the dietary laws of his religion and sufficient to sustain good health.

REPORT AND RECOMMENDATION - 1

Therefore, Plaintiff has adequately alleged his First Amendment rights were violated and those rights were clearly established at the time of the alleged violation. Accordingly, the Court recommends Defendant's Motion be denied.

## I.     Background

Plaintiff alleges his First Amendment protections were infringed because Defendant provided only non-kosher eggs in Plaintiff's kosher diet. Dkt. 31. Plaintiff argues he informed Defendant he was receiving non-kosher food with his kosher meals and requested Defendant to provide a kosher alternative, but Defendant failed to do so. *Id*. Plaintiff also states he requested the kosher alternative "in order to sustain [him] in good health that satisfies the dietary laws of his Jewish faith." *Id*. at p. 7. He states further that he was forced to make a choice: "Either [Plaintiff] eats the non-kosher eggs, or he goes hungry. [Plaintiff] chooses the lat[t]er." *Id*. at p. 9. Plaintiff requests an injunction, ordering Defendant to "strictly adhere to the Kashrut in the [Kosher Diet Plan]," as well as monetary damages in an unspecified amount. *Id*. at p. 10.

Defendant has now filed its Motion, arguing Plaintiff has failed to state a claim because he has not alleged he was denied a kosher diet, only that the eggs he was provided were not kosher. Dkt. 33. He also argues Plaintiff has not adequately alleged he was deprived of a nutritionally adequate diet and argues Plaintiff has access to numerous other kosher foods, so failure to provide kosher eggs does not rise to the level of a constitutional violation. *Id*. In the alternative, Defendant also argues he is entitled to qualified immunity. *Id*. Plaintiff opposes the Motion. Dkt. 35.

## II. Standard of Review

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

**III.    Discussion**

    A.  <u>First Amendment Free Exercise of Religion</u>

Plaintiff alleges his First Amendment rights were violated when Defendant allegedly provided non-kosher eggs with Plaintiff's kosher meals. Under the First Amendment, Plaintiff bears the initial burden of establishing Defendant's substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (overruled in part on other grounds by *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008)). To show that a First Amendment right to free exercise of religion has been violated, a prisoner must demonstrate a burden to a sincerely held belief that is rooted in religion. *Shakur*, 514 F.3d at 884. To "substantially burden" the practice of an individual's religions, the interference must be more than an inconvenience, *Freeman*, 125 F.3d at 737, or an isolated incident or short-term occurrence, *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (short-term and sporadic intrusion upon a pre-trial detainee's prayers did not constitute a substantial interference with detainee's religious practice). "[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" are insufficient to state a claim under the free exercise clause. *Lovelace v. Lee*, 471 F.3d 174, 194 (4th Cir. 2006). *See also Camacho v. Shields*, 368 F. App'x 834, 835 (9th Cir. 2010) (interruption of inmate's prayers on one occasion did not constitute a substantial burned on inmate's free exercise of religion); *Uhuru v. Hart*, 2009 WL 3489376 at *12 (C.D. Cal. Oct. 27, 2009) (requiring prisoner to remove his religious head covering on one occasion was not a substantial burden on his religious practice).

1     If a substantial burden exists, the Court must then determine whether the regulation is
2 reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89. The
3 Court must consider whether there is a "valid, rational connection" between the prison officials'
4 actions and a legitimate government interest put forward to justify it. *Id*. "[I]f the prison fails to
5 show that the regulation is rationally related to a legitimate penological objective, we do not
6 consider [any] other facts." *Ashker v. Cal. Cep't of Corr.*, 350 F.3d 917, 922.

7     Plaintiff alleges his First Amendment rights were violated because he was deprived of an
8 adequate kosher diet because non-kosher eggs are included in his meals. He argues his sincerely
9 held religious beliefs are burdened by not being provided a diet that is both compliant with the
10 dietary laws of his religion and sufficient to sustain good health. *See* Dkt. 31. Plaintiff states
11 Defendant "has made the conscious decision to serve non-kosher items in the Kosher Diet
12 Program, thereby depriving [Plaintiff] of his inherent and constitutionally protected right to
13 believe, express, and exercise his Jewish faith." Dkt. 31, p. 1. Plaintiff alleges his facility
14 switched from certified kosher eggs to non-kosher eggs on or around November 4, 2017. *Id*. at p.
15 2. He alleges he raised the issue with Defendant, who responded he believed the new eggs were,
16 in fact, kosher because they "[weren't] slaughtered or mi[x]ed with the other non-kosher foods."
17 *Id*. at p. 3. However, Plaintiff also alleges Defendant stated "he had done extensive research, and
18 could not find kosher eggs," and that "the eggs meet the required standards." *Id*. Defendant
19 subsequently declined to order the original certified kosher eggs or provide a kosher replacement
20 for the non-kosher eggs. *Id*. at p. 6. Plaintiff alleges he requested the replacement "in order to
21 sustain [P]laintiff in good health that satisfies the dietary laws of his Jewish faith," and the
22 failure to provide any kosher replacement for the allegedly non-kosher eggs "placed pressure on
23 Plaintiff to modify his behavior and violate his sincerely held beliefs." *Id*. at p. 7. He states
24

1  further he was forced to make a choice: "Either [Plaintiff] eats the non-kosher eggs, or he goes
2  hungry. [Plaintiff] chooses the lat[t]er." *Id*. at p. 9.

3  Defendant argues Plaintiff has failed to state a claim for which relief can be granted
4  because Plaintiff is not arguing he is not receiving a kosher diet – only that he is not receiving
5  kosher eggs. Dkt. 33, p. 3. He states, though prisoners have a right to a diet that is both sufficient
6  to sustain good health and complies with the prisoner's religious beliefs, Plaintiff has not alleged
7  his diet, even without eggs, is insufficient. *Id*. He also argues Plaintiff's deprivation is merely an
8  inconvenience, rather than a substantial burden rising to the level of a First Amendment
9  violation. *Id*. Because Plaintiff has other food options and is not being wholly denied a kosher
10 diet, Defendant argues Plaintiff has not alleged he is being forced to choose between a
11 nutritionally adequate diet and a religiously proper diet, nor has he alleged he is being coerced
12 into eating non-kosher food. *Id*. at pp. 3-4.

13 Initially, the Court notes Defendant's argument that Plaintiff had access to other kosher
14 food is a relevant fact in determining whether Plaintiff's meals were ultimately nutritionally
15 adequate – indeed the Court relied on this assertion in a previous Report and Recommendation to
16 deny Plaintiff's request for a preliminary injunction. *See* Dkt. 32. However, this is a motion
17 pursuant to Rule 12(b)(6), not a motion for summary judgment or a motion for a preliminary
18 injunction, and so the Court must generally evaluate only the pleadings. *See Van Buskirk v.*
19 *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting a Court may ordinarily
20 only look at "the face of the complaint" when making a Rule 12(b)(6) determination). "If, on a
21 motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not
22 excluded by the court, the motion must be treated as one for summary judgment under Rule 56."
23 Fed. R. Civ. P. 12(d). Here, though Defendant submitted evidence with his previous filings, he
24

1   has not cited to any of that evidence in his Motion. *See* Dkt. 33. He has also not attached any

2   additional documents or included any additional evidence with his Motion. Because Defendant

3   has not cited to or provided anything outside the pleadings with his Motion, the Court will not

4   treat the Motion as a motion for summary judgment and thus will not consider evidence that

5   Plaintiff's meals were nutritionally adequate. Instead, the Court must read Plaintiff's Amended

6   Complaint liberally and takes as true Plaintiff's *allegation* that Defendant failed to replace the

7   allegedly non-kosher eggs with some other kosher item "in order to sustain plaintiff in good

8   health that satisfies the dietary laws of his Jewish faith," Dkt. 31, p. 7, and that Plaintiff was

9   forced to either "eat[] the non-kosher eggs, or go[] hungry." *Id*. at p 10.

10       Here, the Court finds Plaintiff has stated a claim for which relief may be granted. Plaintiff

11   has alleged Defendant included non-kosher food in his kosher meals, and has not provided a

12   kosher alternative. Plaintiff states he requested a kosher alternative to "sustain [P]laintiff in good

13   health" while adhering to his religious beliefs. Dkt. 31, p. 7. Plaintiff also argues he was deprived

14   of a "proper" kosher diet because Defendant was allegedly serving non-kosher food with his

15   kosher meals. Dkt. 35, p. 4. Finally, contrary to Defendant's assertions, Plaintiff states "[e]ither

16   [Plaintiff] eats the non-kosher eggs, or he goes hungry. [Plaintiff] chooses the lat[t]er." Dkt. 31,

17   p. 9. Thus, read liberally, Plaintiff alleges he was provided meals with non-kosher food, and he

18   was forced to choose to eat his full meal and violate his religious beliefs, or forego eating his full

19   meal and adhere to his religious beliefs. Thus, taking Plaintiff's allegations as true and reading

20   Plaintiff's Amended Complaint liberally, Plaintiff has made allegations that amount to a

21   substantial burden on his religious practice. *See*, *e.g.*, *McDaniel v. Fizer*, 2013 WL 5814800, at

22   *4 (D. Ariz. Oct. 29, 2013) (the choice between a halal diet that caused indigestion and disrupted

23   a prisoner's prayers, a main line diet that was haram (forbidden), or changing his designated

24

REPORT AND RECOMMENDATION - 7

1  religion to "Jewish" in order to receive a kosher meal constituted a substantial burden on the
2  prisoner's religious practice); *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir. 2009) (finding a
3  substantial burden when a Catholic prisoner was denied meals lacking meat on Fridays and
4  during lent, forcing the prisoner to choose between sincere religious belief and adequate
5  nutrition); *but see Musto v. Trinity Food Services, Inc.*, 2010 WL 3565723, at *10 (M.D. Fl.
6  Sept. 9, 2010) (denial of certain meal items did not amount to a constitutional violation when a
7  prisoner failed to show he was forced to choose between an adequately nutritious diet and a diet
8  that comports with his religious beliefs).

9  Finally, Defendant has not provided any argument that the decision to switch from
10  certified kosher eggs to the allegedly non-kosher eggs served with the kosher diet is related to a
11  legitimate penological interest. Because Defendant has failed to argue the decision that caused
12  Plaintiff's alleged substantial burden is related to a legitimate penological interest, the Court will
13  not consider any other facts. *Ashker*, 350 P.3d at 922. Plaintiff has thus alleged his religious
14  practice was substantially burdened and Defendant has not shown how the alleged burden was
15  reasonably related to a legitimate penological interest. Therefore, Plaintiff has stated a claim for
16  which relief may be granted. Accordingly, the Court recommends Defendant's Motion (Dkt. 33)
17  be denied as to Plaintiff's First Amendment claim on the merits.

18      B.  Qualified Immunity

19  Defendant asserts he is entitled to qualified immunity. When defendants assert qualified
20  immunity in a motion to dismiss under Rule 12(b)(6), "'dismissal is not appropriate unless [the
21  Court] can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien*
22  *v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th
23  Cir. 2001)). Although Defendant is entitled to raise qualified immunity in a motion to dismiss,
24

generally speaking, it is better addressed in the context of a motion for summary judgment. *See Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (noting it is difficult for courts to decide qualified immunity at the motion to dismiss stage because it forces the Court to decide "far-reaching constitution questions on a nonexistent factual record," and suggesting the issue is better left for summary judgment). Thus, if the Court determines dismissal is not appropriate, the Court may deny a qualified immunity defense without prejudice and allow a defendant to re-raise the defense after further factual development at summary judgment or trial. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).

The Court has already determined that dismissal is not appropriate here, and so the Court may deny Defendant's qualified immunity defense without prejudice and allow Defendant to re-raise it after further development. However, the Court determines it will serve the ends of justice to examine Defendant's qualified immunity defense on its merits here.

In determining whether an official is entitled to qualified immunity, a court must determine whether, reading the allegations in the light most favorable to the Plaintiff: (1) Defendant's conduct violated a constitutional right; and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A Court may address the steps of the qualified immunity analysis in whichever order it finds most expedient. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The second step of the qualified immunity analysis provides that defendants are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged

conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995), *overruled in part on other grounds by L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996); *see also Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established.").

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). Although a case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S.Ct. at 551. "[The Supreme Court] has 'repeatedly told courts – and the Ninth Circuit in particular – not to define clearly established law at a high level of generality.'" *Kisela*, 138 S.Ct. at 1152 (quoting *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1775-76 (2015)). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that *every* reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. at 590 (emphasis added). A rule is too general if "the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987)).

1     Defendant initially argues Plaintiff has not alleged he suffered any sort of constitutional

2 injury. Dkt. 33, p. 5. However, as discussed n Section III(A) *supra*, the Court has determined

3 Plaintiff has adequately stated a claim for which relief can be granted, and so the Court finds

4 Plaintiff has adequately alleged he suffered a constitutional injury.

5     Defendant then argues "[i]f [Plaintiff] is correct that fresh eggs must somehow be

6 certified Kashrut, the law is not so well established that 'it would be clear to a reasonable officer

7 that his conduct was unconstitutional . . . .' *See Anderson v. Creighton*, 483 U.S. 635, 640

8 (1987)." Dkt. 33, p. 5. He argues his alleged mistaken reliance on the guidance provided by the

9 Department of Corrections ("DOC") constitutes nothing more than a reasonable mistake that

10 does not rise to the level of a constitutional violation. *Id*.

11     However, reading Plaintiff's allegations liberally, and taking all Plaintiff's allegations as

12 true, Plaintiff is claiming more than that the eggs should be certified kashrut. Rather, he alleges

13 Defendant provided non-kosher items in a kosher meal plan, Plaintiff informed Defendant he

14 was being provided non-kosher items, Plaintiff requested Defendant provide a substitute "in

15 order to sustain [P]laintiff in good health," Dkt. 31, pp. 6-7, and Defendant refused to take any

16 remedial action. Thus, read liberally, Plaintiff has alleged his sincerely held religious beliefs are

17 burdened by not being provided a diet that is both compliant with the dietary laws of his religion

18 and sufficient to sustain good health and as such, forcing him to choose to between a

19 nutritionally adequate diet or a religiously proper diet. It has long been clearly established that

20 forcing a prisoner into that particular "Hobson's choice" violates his First Amendment rights.

21 *See McElyea v. Babbitt*, 833 F.2d 196, 198 (1987).

22     Defendant also argues in part he is entitled to qualified immunity because he was obeying

23 the DOC policy, which was formulated in conjunction with Jewish leaders in the community,

24

REPORT AND RECOMMENDATION - 11

and which indicated the fresh eggs Defendant was serving with the kosher diet were, in fact, kosher. Dkt. 33, p. 5. Though this argument could insulate Defendant at a later stage, it does not do so here. This is a motion to dismiss pursuant to Rule 12(b)(6), and, as discussed above, Defendant has not cited any outside evidence that would allow the Court to treat this Motion as a motion for summary judgment. As such, only the pleadings may be taken into account. Whether Defendant was informed by Plaintiff that the eggs were non-kosher but, nonetheless, Defendant reasonably believed he could permissibly serve them based on DOC policy requires an examination of the facts appropriate at a later stage of litigation.

Reading Plaintiff's allegations liberally and taking them as true, Defendant's actions violated Plaintiff's constitutional right to have religious meals nutritionally sufficient to sustain good health, and that right was clearly established at the time of the alleged violations. Therefore, Defendant is not entitled to qualified immunity at this stage. Accordingly, the Court recommends Defendant's Motion be denied. Defendant may raise this defense again after the record has been more fully developed.

C. <u>Stay of Discovery</u>

Defendant finally requests the Court stay discovery pending its determination as to qualified immunity. However, the Court has found Defendant is not entitled to qualified immunity at this stage in the proceedings. Therefore, Defendant's request is moot. Accordingly, the Court recommends Defendant's request be denied without prejudice. Defendant may again raise this request when and if he raises qualified immunity after the record has been more fully developed.

## IV. Conclusion

Based on the foregoing, the Court concludes Plaintiff has adequately stated a claim for which relief can be granted and Defendant is not entitled to qualified immunity at this stage in the proceeding. Accordingly, the Court recommends Defendant's Motion (Dkt. 33) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on January 4, 2019, as noted in the caption.

Dated this 17th day of December, 2018.

/s/ David W. Christel
David W. Christel
United States Magistrate Judge