UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Curlin Pennick III,<br><br>                Plaintiff,<br><br>   v.<br><br>Barry DeHaven,<br><br>                Defendant. | CASE NO. 3:18-cv-05434-BHS-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: August 16, 2019 |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendant Barry DeHaven's Third Motion for Summary Judgment (the "Motion"). Dkt. 71.

After reviewing the relevant record, the Court finds Plaintiff Curlin Pennick III failed to overcome Defendant's summary judgment showing there is no genuine issue of material fact regarding the claim he was denied his right to free exercise of religion pursuant to the First Amendment. Therefore, the Court recommends Defendant's Motion (Dkt. 71) be granted and this case be closed.

## I. Background

Plaintiff, an inmate housed at the Stafford Creek Corrections Center ("SCCC") at the time of the alleged constitutional violations,[1] contends Defendant, Barry DeHaven, violated his right to free exercise of religion under the First Amendment. Dkt. 65. Plaintiff contends Defendant, who is the Food Services Manager at SCCC, served non-kosher chicken eggs as a part of the SCCC kosher diet plan. Dkt. 65. Plaintiff seeks monetary damages in an unspecified amount. Dkt. 65 at 9.

On August 15, 2018, Defendant filed the First Motion for Summary Judgment on August 15, 2018. Dkt. 12. In response, Plaintiff moved to amend his complaint, which the Court granted. Dkts. 24, 30, 31. On October 18, 2018, Defendant filed a Motion to Dismiss, which the Court denied. Dkts. 33, 41, 42. Defendant filed the Second Motion for Summary Judgment on January 24, 2019. Dkt. 50. Plaintiff again moved to amend his complaint, which the Court granted a second time. Dkts. 43, 64. Plaintiff filed his Second Amended Complaint on March 7, 2019, which is the operative complaint in this matter. Dkt. 65.

Defendant filed the Third Motion for Summary Judgment (the "Motion") on April 9, 2019. Dkt. 71. Plaintiff moved to amend his complaint a third time, which the Court denied.[2] Dkt. 86. After an extension of time to respond to the Motion, Plaintiff filed a Response on June 17, 2019. *See* Dkts. 78, 79, 86, 87. In Plaintiff's Response, he abandons "all of the other claims in his Second Amended Complaint with the exception of his Free Exercise claim." Dkt. 87 at 3. Plaintiff's Response only addresses his claim related to the allegedly non-kosher eggs. *See* Dkt. 87. The Court interprets this as Plaintiff's concession of his retaliation claim and the claim

---

[1] Plaintiff is currently housed at the Monroe Correctional Complex – Twin Rivers Unit. *See* Dkt.
[2] The Court also denied Plaintiff's Motion to Compel seeking Defendant to fully answer two interrogatories because Plaintiff failed to meet and confer, and Defendant had already responded to the discovery requests. Dkts. 78, 86.

1  related to the amount of corn syrup in the kosher diet plan meals. *See* Dkt. 87. Thus, the Court

2  will only consider Plaintiff's free exercise claim related to the allegedly non-kosher eggs in this

3  Report and Recommendation.

4      Defendant filed his Reply on June 21, 2019. Dkt. 88. On July 2, 2019, Plaintiff filed a

5  surreply. Dkt. 89 (stricken). On July 3, 2019, Defendant filed a Notice of Intent to File a Surreply.

6  Dkt. 90. On July 5, 2019, Defendant filed a surreply and a Motion to Strike Plaintiff's Surreply.

7  Dkt. 91. The Court granted Defendant's Motion to Strike Plaintiff's Surreply (Dkt. 91) and

8  directed the Clerk to strike Plaintiff's surreply (Dkt. 89).

9  **II.    Standard of Review**

10      Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

11  file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

12  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

13  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

14  showing on an essential element of a claim in the case on which the nonmoving party has the

15  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

16  fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

17  the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

18  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

19  metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

20  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

21  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

22  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

23  626, 630 (9th Cir. 1987).

24

### III. Discussion

Plaintiff alleges Defendant's actions violated his First Amendment right to free exercise of religion. Dkt. 65. Defendant asserts he is entitled to judgment as a matter of law because Plaintiff has not shown his constitutional rights have been violated.[3] Dkt. 71. The Court agrees.

#### A. First Amendment – Free Exercise Claim

##### 1. <u>Defendant's Evidence</u>

The Department of Corrections ("DOC") provides several religious diet options, including a kosher diet plan to its inmates. Dkt. 72 at 2 (Declaration of Belinda Stewart);[4] Dkt. 75 at 2 (Amended Declaration of Brent Carney).[5] The DOC ensures items included in the kosher diet plan meet caloric and nutritional guidelines. Dkt. 75 at 2. Plaintiff participated in the kosher diet plan while housed at SCCC. Dkt. 73 at 2 (Amended Declaration of Barry DeHaven). The kosher diet plan was developed by the DOC in connection with Jewish advisors and consultants. Dkt. 51-1 at 2-10; Dkt. 52 at 2; Dkt. 75 at 2. DOC headquarters manages the kosher diet plan menu to ensure each meal meets nutritional and religious standards. Dkt. 74 at 1-2 (Declaration of Jamie Dolan).[6] When a change to the kosher diet plan is necessary, a substitution must be made from the preapproved kosher food list. *Id.*

The DOC has a set of standardized food handling guidelines for kosher food (the "Kosher Guidelines"). Dkt. 52 at 2; Dkt. 52-1 at 2-6. The Kosher Guidelines establish food handling and

---

[3] Plaintiff does not allege violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *See* 42 U.S.C. §§ 2000cc, et seq.

[4] Belinda Stewart is the Corrections Program Administrator for the DOC. Dkt. 72 at 1. Ms. Stewart is responsible for establishing and maintaining programs, practices, and policies which address inmates' religion and cultural needs. *Id.*

[5] Brent Carney is the Dietary Services Manager for the DOC. Dkt. 75 at 1. Mr. Carney is responsible for approving nutritional contents including caloric amounts of the food served at DOC facilities. *Id.* at 1-2.

[6] Jamie Dolan is the Assistant Director of Correctional Industries for the DOC since May 25, 2018. Prior to this position, Jamie Dolan was the Food Service Administrator for the DOC. Dkt. 74.

preparation procedures to ensure food served as a part of the kosher diet plan remains kosher. Dkt. 52 at 2; Dkt. 52-1 at 1-6; Dkt. 53 at 2. At SCCC, the kitchen has a kosher workspace. Dkt. 73 at 2. The table in the kosher workspace is covered with two layers of new parchment paper, foil, or plastic wrap to maintain a barrier between the kosher food and the workstation. Dkt. 52-1 at 3; Dkt. 53 at 2. Individual, prepackaged, unopened kosher entrees are purchased from an outside vendor and distributed to DOC facilities and are kept separate from other non-kosher food. Dkt. 52 at 2; Dkt. 52-1 at 3. At SCCC, kitchen staff members reheat the meals and serve them to inmates. Dkt. 52 at 2; Dkt. 52-1 at 2-6; Dkt. 73 at 2. The prepacked kosher meals are, at most, slightly vented, then reheated, and do not come into contact with other foods after they are opened. Dkt. 53 at 2-3; Dkt. 73 at 2.

According to Amy Wasser, the lead coordinator for the Jewish faith with the DOC, these procedures maintain the foods served as kosher. Dkt. 53 at 2 (Declaration of Amy Wasser).[7] There is no need for the entire kitchen or the kosher workspace to be officially certified as kosher or kashrut. Dkt. 53 at 2. According to Ms. Wasser, chickens are a kosher animal; therefore, whole, unshelled chicken eggs are naturally kosher and do not need a special kosher certification unless they have been taken out of their shell. Dkt. 53 at 2. If eggs are prepared (cooked or unshelled), the preparation must comply with the laws of kashrut for the eggs to remain kosher. *Id.* The eggs (hard boiled) served as a part of the SCCC kosher diet plan are prepared in accordance with the Kosher Guidelines. Dkt. 73 at 2. According to the Kosher Guidelines, the eggs must be double bagged at a kosher workspace, cooked or steamed in a pot reserved for that purpose, and then served in the bag. Dkt. 52-1 at 2-6. This process complies with the laws of

---

[7] Amy Wasser is the lead coordinator for the Jewish faith with the DOC to provide religious services and contract chaplain oversight. Dkt. 53.

REPORT AND RECOMMENDATION - 5

kashrut and keeps the eggs kosher. Dkt. 53 at 2. In 2017, inmates who elected to receive the SCCC kosher diet plan received between two to four eggs per week.[8] Dkt. 75 at 2; Dkt. 51-1 at 2-10, Attachment A.

The kosher diet plan provides approximately 2800 calories daily. Dkt. 75 at 2-3; Dkt. 51-1 at 12-67. The DOC's dietitian, Brent Carney, reviews and approves each menu for nutritional and caloric content before it is implemented. Dkt. 75 at 1-2. According to Mr. Carney, the kosher diet plan is nutritionally balanced and meets the daily requirements needed to sustain a person in good health including 100 grams of protein, 343 grams of carbohydrates, 44 grams of dietary fiber, and 111 grams of fat. Dkt. 75 at 2, Attachment C.

During the six months prior to the filing of Defendant's Motion, Plaintiff purchased from the SCCC commissary, among other items, Blazin' Hot Cheese Nibbles, Blazin' Hot Nacho Cheese Tortilla Chips, Jalapeno Potato Chips, Crunchy Jalapeno Nuggets, Spicy Jalapeno Beef Summer Sausage, and Cheddar Bacon Cheese Spread— none of which are kosher. Dkt. 76 (Declaration of Salina Brown),[9] Exhibit 1 (Union Supply Food Purchased). Plaintiff's weight has remained between 290 to 297 pounds. *Id.* at Exhibit 3 at 8, 15, 16, 18, 19, 38. During Plaintiff's 2018 annual mental health update, Plaintiff reported he has gained 11 pounds, which followed weight loss efforts that reduced his weight by 14 pounds. *Id.* at 38.

### 2. Plaintiff's Evidence

According to Plaintiff's declaration, on or about November 4, 2018, Defendant switched the eggs in kosher diet plan to non-kosher eggs.[10] Dkts. 65, 87 at 13. Plaintiff raised the issue

---

[8] During Passover, SCCC serves prepackaged, peeled hard-boiled eggs. Dkt. 73 at 2. These eggs are purchased from an outside vendor, which certifies the eggs are kosher. *Id.*

[9] Salina Brown is an Administrative Assistant and serves as the Legal Liaison Officer at SCCC. Dkt. 76.

[10] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal

1  with Defendant, who responded the eggs were kosher. *Id.* Defendant stated he had done research
2  and could not find kosher eggs, and the replacement eggs met the required standards. *Id.* at 13-
3  14. Plaintiff states the eggs are not kosher because they are the "product of factory farming[,]"
4  and they are prepared in a standard prison kitchen. Dkt. 87 at 7, 8. Plaintiff bases this argument
5  on his own "personal information." Dkt. 87 at 7. Plaintiff has chosen to "go hungry" rather than
6  eat the kosher diet plan meals. Dkt. 65 at 4.

   3. Analysis

8  To satisfy a First Amendment religious claim, a plaintiff "must show the [defendant]
9  burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by
10 his faith, without any justification reasonably related to legitimate penological interests."
11 *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley,* 482 U.S. 78, 89
12 (1987)). "In order to reach the level of a constitutional violation, the interference with one's
13 practice of religion must be more than an inconvenience; the burden must be substantial and an
14 interference with a tenet or belief that is central to religious doctrine." *Freeman,* 125 F.3d at 737
15 (citing *Graham v. C.I.R.,* 822 F.2d 844, 851 (9th Cir. 1987)).

16 Additionally, a prison official's negligent or accidental interference with an inmate's
17 ability to exercise his religious beliefs does not state any claim actionable under § 1983.
18 *Lovelace v. Lee,* 472 F.3d 174, 194 (4th Cir. 2006). Instead, a plaintiff must demonstrate the

---

knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). In this case, Plaintiff attested under penalty of perjury the contents of the following documents are true and correct: Complaint (Dkt. 65) and Response (Dkt. 87). Thus, the Court will consider these pleadings in ruling on Defendants' Motion. Plaintiff also submits Defendant's responses to his First Set of Interrogatories and Request for Production of Documents. Dkt. 87 at 28-37. These responses were signed under penalty of perjury by Defendant. *See id.*

1  prison officials knowingly placed a substantial burden on his ability to practice his religious
2  beliefs. *See Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 450 (1988).
3    With respect to religious diets, prisoners "have the right to be provided with food
4  sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea*
5  *v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). Here, there is no dispute the religious practice at
6  issue here—the provision of an adequate kosher diet—concerns a sincerely held belief and
7  Plaintiff's claim is rooted in religious belief. *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir.
8  1994).
9    Thus, the next step in the analysis is whether Plaintiff can demonstrate a substantial
10 burden on his religious belief. *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Ohno v.*
11 *Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (substantial burden exists where the plaintiff is
12 pressured to modify his behavior and violate his beliefs). Plaintiff alleges the SCCC kosher diet
13 plan forced him to choose being eating the non-kosher eggs and going hungry, and Plaintiff
14 chose to go hungry. Dkts. 65 at 4; 87.
15   Even assuming there is an issue of material fact as to whether the eggs served as a part of
16 the SCCC kosher diet plan are kosher, Plaintiff has not shown a substantial burden on his
17 religious belief because the evidence reflects the eggs constitute a very minimal portion of
18 Plaintiff's daily caloric intake. Defendants submit evidence of the kosher diet meal plans from
19 2017 and 2018 and the nutrient analysis. Dkt. 51, Attachments A, B, C. These exhibits are
20 accompanied by the declaration of Mr. Carney and certify the kosher diet meal plans provide an
21 average calorie count of approximately 2800 calories per day. *Id.* The undisputed evidence
22 reflects Plaintiff received two to four eggs per week in 2017 and he received at least 2700

calories of other kosher foods on the days he did receive eggs and 2800 calories on the days he did not receive eggs. Dkt. 51 at 3; Dkt. 51-1 at 2-67.

A mere inconvenience does not equate to a substantial burden on the free exercise of religion. *Freeman,* 125 F.3d at 737. The denial of two to four eggs per week while receiving a minimum of 2700 calories per day does not demonstrate Plaintiff was forced to choose between and adequately nutritious diet and one which comports with his religious beliefs. *See Sprouse v. Ryan,* 346 F. Supp. 3d 1347, 1356 (D. Ariz. 2017) (receiving 2150 to 2200 calories a day is not inadequate, thereby forcing the plaintiff to forgo or significantly alter his religious practice to maintain proper nutrition); *Musto v. Trinity Food Services, Inc.*, 2010 WL 3565723, at *10 (M.D. Fl. Sept. 9, 2010) (denial of certain meal items did not amount to a constitutional violation when a prisoner did not show he was forced to choose between an nutritious diet and his religion). Other than his conclusory allegation he went "hungry," Plaintiff has not presented any evidence or specific facts demonstrating he lost a significant amount of weight because he received insufficient calories or because of the food provided on the kosher diet plan. *See* Dkts. 65, 87. 65. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory allegations unsupported by factual data are insufficient to defeat a summary judgment motion). Rather, the evidence reflects Plaintiff maintained his weight between 290 to 297 pounds. Dkt. 76, Exhibit 3 at 8, 15, 16, 18, 19, 38. In addition, although the evidence reflects Plaintiff purchased non-kosher items from the commissary, Dkt. 76 at Exhibits 1, 2, 3, he does not allege he had to supplement his diet with non-kosher items from the commissary or non-kosher bartered foods, or he had to take any other action which effectively forced him to violate his religious practice in order to obtain sufficient calories.

Thus, Plaintiff fails to present specific facts or evidence to show receiving 2700 calories (on days where he was provided with two eggs) is inadequate, thereby forcing him to forgo or significantly alter his religious practice to maintain proper nutrition. *See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (holding "short-term and sporadic" interference with free exercise rights does not violate the First Amendment); *Combs v. Washington,* 660 F. App'x 515, 517 (9th Cir. 2016) (sporadic mistakes in kosher food preparation principles which resulted from inadvertence and do not rise to the level of a constitutional violation).

Viewing the evidence in the manner most favorable to Plaintiff, the undersigned finds Defendant did not substantially interfere with Plaintiff's ability to freely exercise his religion. There was no denial of any benefit—here, the kosher meals. His belief the kosher diet plan meals should have contained higher calories, different percentages of nutrients, or a different selection of food does not demonstrate the kosher diet plan meals substantially interfered with his religious practice.

In the Response, Plaintiff appears to argue the SCCC food preparation process results in the entire meal being non-kosher, not only the eggs. Dkt. 87 at 8-9. However, even if Plaintiff had shown an issue of material fact as to whether Defendant substantially interfered with his religious practice, Plaintiff's allegations do not support a finding that Defendant made an intentional decision to serve Plaintiff non-kosher food or meals. To amount to a constitutional violation and survive summary judgment, Plaintiff must set forth facts showing there is a genuine issue whether, in taking a specific action, a prison official knowingly and intentionally placed a substantial burden on his ability to practice his religious beliefs. *See Jackson v. Lewis,* 163 F.3d 606 (9th Cir. 1998); *Lewis v. Mitchell*, 416 F.Supp.2d 935, 944 (S.D. Cal. 2005) ("Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation of his

Free Exercise rights."); *see also Lovelace*, 472 F.3d at 201 (requiring plaintiff to assert an intentional interference with his free exercise rights to state a valid claim).

In a conclusory manner, Plaintiff contends Defendant acted knowingly and intentionally in placing a substantial burden on Plaintiff's ability to practice his religion by refusing to replace non-kosher food with kosher food. Dkt. 65 at 7; Dkt. 87 at 8. However, "[s]weeping conclusory allegations will not suffice to prevent summary judgment. The [plaintiff] must set forth specific facts as to each individual defendant's" causal role in the alleged constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (internal citation omitted). Plaintiff has failed to set forth any evidence Defendant was directly involved in any deliberate or intentional contamination of Plaintiff's kosher diet. *See Lovelace,* 472 F.3d at 194.

Instead, the evidence reflects the kosher diet meal plan is reviewed by the DOC's religious advisors and Mr. Carney. Dkt. 73 at 1-2; Dkt. 74 at 1-2; Dkt. 75 at 1-2. Defendant does not have any involvement in developing the kosher diet plan menu, developing the food preparation guidelines or procedures, determining how the food is procured, or selecting vendors of kosher products. *See id.* Rather, Defendant's responsibilities are limited to choosing from a list of approved kosher food and following the procedures to prepare and serve food pursuant to the DOC's Kosher Guidelines. Dkt. 73 at 1; Dkt. 74 at 2. Defendants have produced several documents establishing the SCCC kitchen complies with the DOC's Kosher Guidelines, has a kosher work area which is reserved for preparing kosher foods, and certain pots, pans, and cooking utensils are used only for kosher foods. Dkt. 52-1 at 3; Dkt. 73 at 2. These procedures ensure kosher food is not contaminated by non-kosher food. Dkt. 53 at 2.

Plaintiff alleges he put Defendant on notice the eggs were not kosher, but Defendant failed to replace the eggs. Dkt. 87 at 1-2. However, Plaintiff also acknowledges Defendant

responded the eggs were in fact kosher and after research, Defendant determined the eggs met the required standards. Dkt. 87 at 2, 13. Thus, at most, the evidence indicates Defendant believed the eggs were kosher, and therefore, any interference with Plaintiff's ability to exercise his religious beliefs was accidental and does not rise to the level of a constitutional violation. Plaintiff offers nothing more than conclusory allegations about Defendant's role in depriving him of a kosher diet.

As such, Plaintiff fails to demonstrate he was subject to a substantial burden or Defendant's actions amounted to more than anything other than a negligent or accidental interference with Plaintiff's ability to exercise his religious beliefs. The Court recommends granting Defendant's Motion to dismiss Plaintiff's claim that Defendant's actions violated his First Amendment right to free exercise of religion.

**IV.    Qualified Immunity**

Because the Court has already determined Defendant is entitled to summary judgment as to all Plaintiff's underlying claim, the Court declines to determine whether Defendant enjoys qualified immunity.

**V.    Conclusion**

For the above stated reasons, the Court finds Plaintiff has failed to overcome Defendant's showing there is no genuine issue of material fact remaining in this case. Accordingly, the Court recommends Defendant's Motion (Dkt. 71) be granted and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

1 | imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

2 | August 16, 2019 as noted in the caption.

3 |     Dated this 25th day of July, 2019.

4

5 |                             /s/ David W. Christel

6 |                             David W. Christel
                            United States Magistrate Judge